53 A.3d 1142

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Tiffany T. ALSTON.

Misc. Docket AG No. 13, Sept. Term, 2011.

Court of Appeals of Maryland.

Sept. 25, 2012.

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Tiffany T. Alston, for Respondent.

Argued before: BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

BARBERA, J.

Petitioner, Attorney Grievance Commission (Commission), acting through Bar Counsel, has filed with this Court a Petition for Disciplinary or Remedial Action against Respondent, Tiffany T. Alston. The Commission alleges several violations of the Maryland Lawyers' Rules of Professional Conduct (MLRPC) in connection with Respondent's representation of a client and improper maintenance of Respondent's attorney trust account. Respondent previously acknowledged these violations in a Conditional Diversion Agreement (CDA). The Commission further alleges that Respondent failed to comply with the conditions of the CDA, which led to revocation of the CDA.

Pursuant to Maryland Rules 16–752(a) and 16–757(c), we designated the Honorable Alfred W. Northrop to conduct an evidentiary hearing and file written findings of fact and conclusions of law in this matter. Respondent's failure to respond timely to the Petition for Disciplinary Action prompted Bar Counsel to request, and Judge Northrop to grant, an Order of Default. The Order of Default set in the matter for an evidentiary hearing on November 17, 2011. Respondent was notified of the Order of Default, the scheduled hearing date, and her right to file a motion to vacate the default within 30 days of its entry.

Respondent did not file timely a motion to vacate the Order of Default. Instead, on the morning of the hearing, she apparently brought to the Circuit Court a Motion to Vacate the Order of Default *Nunc Pro Tunc*. An unsigned version of the motion was presented to Judge Northrop (whether by Respondent or someone else) and, evidently, the motion had not been filed formally with the Clerk's Office. Presumably at Respondent's request, Judge Northrop granted her on that morning leave to be held harmless from appearing in the

courtroom until 9:30 a.m. Respondent, however, did not appear in court until more than 40 minutes later, after the case had been called; the judge denied Respondent's written motion to vacate; and the hearing, which proceeded ex parte with Bar Counsel, had concluded. Upon her tardy arrival in the courtroom, Respondent requested, and the court denied, a reopening of the hearing.

On December 17, 2011, Judge Northrop issued an Opinion and Order setting forth his findings of fact and conclusions of law. Respondent has filed several exceptions relating to process and procedure, rather than the substance of the hearing judge's findings and conclusions. For the following reasons, we overrule the exceptions and direct that Respondent be suspended indefinitely from the practice of law.

## I.

The procedural facts we summarize here are drawn from Petitioner's Exhibit 1, admitted at the November 17, 2011 hearing before Judge Northrop. Attached to that exhibit are 19 documents, including the CDA and subsequent correspondence between Bar Counsel and Respondent concerning her failure to comply with the terms of the CDA. As we shall see, the CDA in this matter was revoked eventually by the Commission upon its determination that Respondent was in material default of it. In that situation, the terms of the CDA, once confidential, are no longer so, and the contents of the CDA "may be disclosed in a subsequent proceeding against the attorney when relevant to a subsequent complaint based on similar misconduct." *See* Md. Rule 16–736(h)(4), (5). We include the facts pertaining to the CDA and revocation of it as necessary to an understanding of both the procedural posture of this matter and the basis for one of the formal exceptions Respondent places before us for decision.

### *The CDA and its Aftermath*

Dr. Walesia Robinson, a client of Respondent, filed a complaint with the Commission, precipitating Bar Counsel's investigation and the parties' entry into a CDA, which the Commis-

sion approved on July 21, 2010. *See* Md. Rule 16–736(a), (d).[1] The CDA stayed related disciplinary and remedial proceedings pending Respondent's satisfactory fulfillment of its terms. *See* Md. Rule 16–736(c)(4).

Paragraph 5 of the CDA spelled out several conditions to which Respondent agreed she would comply. Among those conditions were the following, set forth in sub-paragraphs C, D, E, and F: (1) Respondent was to continue in the care of the mental health therapist treating her at that time "for at least one year following approval of this agreement" and, "[d]uring that time, Respondent shall be responsible for obtaining quarterly status reports from [the mental health therapist] and shall provide such quarterly reports to Bar Counsel" (sub-paragraph 5C); (2) "[w]ithin sixty (60) days from the date this

---

**1.** Rule 16–736 addresses conditional diversion agreements and provides, in pertinent part:

 (a) **When appropriate.** Upon completing an investigation, Bar Counsel may agree to a Conditional Diversion Agreement if Bar Counsel concludes that:

 (1) the attorney committed professional misconduct or is incapacitated;

 (2) the professional misconduct or incapacity was not the result of any wilful or dishonest conduct and did not involve conduct that could be the basis for an immediate Petition for Disciplinary or Remedial Action pursuant to Rules 16–771, 16–773, or 16–774; [and]

\* \* \*

 (4) the public interest and the welfare of the attorney's clients and prospective clients will not be harmed if, instead of the matter proceeding immediately with a disciplinary or remedial proceeding, the attorney agrees to and complies with specific measures that, if pursued, will remedy the immediate problem and likely prevent any recurrence of it.

 (b) **Voluntary nature of Agreement; effect of rejection or disapproval.** Neither Bar Counsel nor an attorney is required to propose or enter into a Conditional Diversion Agreement. The Agreement shall state that the attorney voluntarily consents to its terms and promises to pay all expenses reasonably incurred in connection with its performance and enforcement. . . .

 (c) . . .

 (4) The Agreement shall provide for a stay of any disciplinary or remedial proceeding pending satisfactory performance by the attorney.

 (d) **Approval by Commission.** A Conditional Diversion Agreement is not valid until approved by the Commission. . . .

agreement is approved, Respondent shall issue a written apology to Dr. Walesia Robinson and shall refund the sum of $5,000.00 to Dr. Robinson, representing one-half of the total amount paid by Dr. Robinson" (sub-paragraph 5D); and (3) Respondent would attend two Continuing Legal Education (CLE) programs specified in the CDA and promptly thereafter submit to Bar Counsel certification of her attendance at each program (sub-paragraphs 5E and 5F).

Several months later, after repeated efforts to secure Respondent's compliance with the terms of the CDA, Bar Counsel, pursuant to Maryland Rule 16–736(f),[2] notified Respondent, by letter dated December 21, 2010, of Bar Counsel's "intention to declare a proposed default on the [CDA]." Bar Counsel explained: "It is Bar Counsel's position that you have failed in a material way to comply with the Agreement, including sub-paragraphs C, D (specifically, the $5,000.00 refund to Dr. Robinson), E and F." In that same December 21 letter, as required by Rule 16–736(f)(1)(C), Bar Counsel informed Respondent that she had the opportunity to submit in writing, by January 5, 2011, a response "to refute Bar Counsel's determination and/or to offer an explanation or proposed

---

2. Maryland Rule 16–736(f), entitled "Revocation of Agreement," provides, in pertinent part:

 (1) Bar Counsel may declare a proposed default on a Conditional Diversion Agreement if Bar Counsel determines that the attorney . . .
 (C) has failed in a material way to comply with the Agreement. Bar Counsel shall give written notice to the attorney of the proposed default and afford the attorney a reasonable opportunity to refute the determination.

 (2) If the attorney fails to refute the charge or to offer an explanation or proposed remedy satisfactory to Bar Counsel, Bar Counsel shall file a petition with the Commission to revoke the Agreement and serve a copy of the petition on the attorney. The attorney may file a written response with the Commission within 15 days after service of the petition. The Commission may act upon the petition and response or may request the parties to supply additional information, in writing or in person.

 (3) If the Commission concludes that the attorney is in material default of the Agreement, it shall revoke the Agreement, revoke the stay of the disciplinary or remedial proceeding, and direct Bar Counsel to proceed in accordance with Rule 16–751, or as otherwise authorized by the Rules in this Chapter.

remedy satisfactory to Bar Counsel." Respondent did not respond in any fashion to the December 21 notice-of-intent letter.

On January 18, 2011, Bar Counsel filed with the Commission a Petition to Revoke Conditional Diversion Agreement, based on Respondent's failure to comply with the above-listed conditions of the CDA as well as the condition set forth in subparagraph 5B of the CDA. That condition directed that Respondent, with a monitor's assistance, "shall implement new accounting procedures for her law practice," including "measures that bring Respondent into compliance with the attorney trust account record-keeping requirements set forth in Maryland Rule 16–606.1."

Also on January 18, 2011, Bar Counsel mailed to Respondent a copy of the petition to revoke the CDA, accompanied by a certified letter informing Respondent that, "[p]ursuant to Maryland Rule 16–736(f)(2), you may file a written response with the Attorney Grievance Commission within **fifteen (15) days** after service of the enclosed petition." The Commission also wrote to Respondent by letter dated January 20, 2011, advising Respondent of the filing of the petition to revoke the CDA and her right to file a written response within 15 days of service of the petition. Respondent was further informed in the January 20 letter that, "[i]f the Commission concludes that you are in material default of the Agreement, it shall revoke the Agreement, revoke the stay of the disciplinary or remedial proceeding, and direct Bar Counsel to proceed in accordance with Rule 16–751,[3] or as otherwise authorized by the Rules."

Respondent was served with the petition to revoke the CDA on January 25, 2011. Pursuant to Rule 16–736(f)(2), Respondent had until February 9, 2011 to file a response. Sometime on or before February 8, 2011, Respondent requested an

---

3. Rule 16–751(a) provides, in pertinent part:

**Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

extension of time within which to respond to the petition to revoke. The record does not reflect either the manner (written or oral) in which Respondent made that request, the grounds she put forth in support of it, or the additional amount of time she requested within which to respond to the petition. By letter dated February 8, 2011, Respondent was advised that the Commission had granted the request, allowing her until February 15, 2011 to respond to the petition.

Respondent did not file a response to the petition to revoke the CDA by February 15, or thereafter, nor did she seek a further extension of time before the granted extension expired. Accordingly, in the absence of any response from Respondent, the Commission, by letter dated February 24, 2011, informed Bar Counsel that the Commission "has concluded that the Respondent is in material default of the Agreement and hereby revokes the Agreement," thereby lifting the stay of disciplinary proceedings. The Commission copied Respondent on that written notice of its decision.

Noteworthy for present purposes, Respondent, a first-time member of the General Assembly beginning with the 2011 legislative session, represented herself in connection with this matter. At no time prior to the Commission's revocation of the CDA did Respondent assert, for the record, that she was entitled to a continuance of the matter, pursuant to Maryland Code (1974, 2006 Repl.Vol.), § 6–402 of the Courts and Judicial Proceedings Article (CJ), until after the close of the 2011 legislative session. CJ § 6–402 provides in pertinent part: "[I]f a member or desk officer of the General Assembly is an attorney of record in a proceeding, the proceeding shall be continued from 5 days before the legislative session convenes until at least 10 days after it is adjourned." [4] *See also* Md.

---

4. Maryland Code (1974, 2006 Repl.Vol.), § 6–402 of the Courts and Judicial Proceedings Article provides:

(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

(2) "Proceeding" includes:

(i) An arbitration proceeding;

(ii) Any part of an action; and

Rule 2–508(d) ("Upon request of an attorney of record who is a member or desk officer of the General Assembly, a proceeding that is scheduled during the period of time commencing five days before the legislative session convenes and ending ten days after its adjournment shall be continued."). The 2011 session of the General Assembly commenced on January 12, 2011 and concluded on April 11, 2011.

By letter dated February 28, 2011, four days after the Commission revoked the CDA, Respondent asked the Commission to "reconsider the decision to revoke the [CDA] and stay any decision on this matter until the legislative session has concluded." Citing Rule 2–508(d), Respondent argued that the Commission's revocation of the CDA was "premature," as she "ha[d] requested a continuance of my time to respond to the [A]ttorney Grievance Commission request to revoke the conditional diversion agreement." Although the wording of her letter could be read as suggesting that Respondent "ha[d]" requested a legislative continuance of the matter at some point *before* the Commission's decision to revoke the CDA, Respondent did not indicate in her February 28, 2011 letter—or in any document filed before or since—when such a request "had" been made. Insofar as the record of proceedings before and since the Commission's action discloses, Re-

---

(iii) Any part of an appellate proceeding.

\* \* \*

(b) *In general.*—Subject to subsection (d) of this section, if a member or desk officer of the General Assembly is an attorney of record in a proceeding, the proceeding shall be continued from 5 days before the legislative session convenes until at least 10 days after it is adjourned.

\* \* \*

(d) *Continuance to prepare brief or other document.*—If a brief, a memorandum of law, or another document is required to be filed in a proceeding continued under this section:

(1) The proceeding shall be continued for a time sufficient to allow it to be prepared and filed; and

(2) Any time prescribed by the Maryland Rules, by rule or order of court, or by any statute applicable to the filing of the document shall begin to run 10 days after the General Assembly adjourns.

\* \* \*

(g) *Application of section.*—This section applies to a proceeding in a federal, State, or local court or administrative agency.

spondent's letter of February 28, 2011 to the Commission marks the first time Respondent asked for a legislative continuance, doing so only in connection with her request of the Commission to reconsider and stay its revocation of the CDA.

The Commission, by letter of March 18, 2011, notified Respondent that, at its meeting on March 16, her request to reconsider revocation of the CDA was denied. That same letter reaffirmed that Bar Counsel was directed to initiate formal charges. *See* Md. Rules 16–736(f)(3), 16–751.

### *The Filing of Formal Charges*

On May 24, 2011, Bar Counsel filed with this Court a Petition for Disciplinary Action charging Respondent with violations of MLRPC 1.3 (diligence); 1.4(a)(2) (communication); 1.15(a) (safekeeping property); 1.16(d) (declining or terminating representation); 8. 1(b) (bar admission and disciplinary matters); and 8.4(a) and (d) (misconduct). By order of this Court, the charges were transmitted to be heard and determined by Judge Northrop. On July 13, 2011, Respondent was served with the petition and summons to file a written response to the petition within 15 days of service. The summons informed Respondent that "[f]ailure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you." *See* Md. Rule 16–754.[5]

---

5. Rule 16–754, entitled "**Answer,**" provides:

(a) **Timing; contents.** Within 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on the petitioner. Sections (c) and (e) of Rule 2–323 apply to the answer. Defenses and objections to the petition, including insufficiency of service, shall be stated in the answer and not by preliminary motion.

(b) **Procedural defects.** It is not a defense or ground for objection to a petition that procedural defects may have occurred during disciplinary or remedial proceedings prior to the filing of the petition.

(c) **Failure to answer.** If the time for filing an answer has expired and the respondent has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default and the provisions of Rule 2–613 shall apply.

Respondent did not file an answer to the petition. Consequently, on August 18, 2011, Bar Counsel filed, pursuant to Maryland Rules 16–754(c)and 2–613(b),[6] a Request for Order of Default. The Circuit Court granted the request by order docketed September 22, 2011. The Order of Default also ordered that the evidentiary hearing be scheduled for the matter to proceed on November 17, 2011. The record reflects that a notice was sent to Respondent's address informing her that the Order of Default had been entered against her and she had 30 days from the date of entry within which to move to vacate the Order. Respondent acknowledged during oral argument before this Court that she knew of the Order of Default and scheduled hearing.

Respondent did not file a timely motion to vacate the Order of Default, and the hearing proceeded on the date scheduled, November 17, 2011. The hearing was scheduled for 9:00 a.m. that morning. On that morning Respondent made a presumably in-person, off-the-record request of Judge Northrop, and she was granted explicit dispensation to be held harmless from appearing in the courtroom until 9:30 a.m.

Shortly before 10:00 a.m., Judge Northrop called the case. Respondent was not present in the courtroom. Bar Counsel advised Judge Northrop that "a short while ago" Respondent had advised counsel that she "was going to find a Rule book, I think, in the library, so I don't know where she is at this particular moment." Bar Counsel, on his initiative, looked for Respondent in the hallway outside the courtroom and reported to Judge Northrop that Respondent had not been seen there. At 10:06 a.m. Judge Northrop, announcing that he had "waited long enough," told Bar Counsel to proceed with the ex parte proof of the charged MLRPC violations.

---

6. Rule 2–613(b), regarding default judgment, provides:

(b) **Order of default.** If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

Before Bar Counsel proceeded, Judge Northrop noted that there was "an unsigned pleading attached to the front of the file." Judge Northrop was referring to Respondent's Motion to Reconsider and Request to Vacate Order of Default *Nunc Pro Tunc* submitted, but evidently not filed, earlier that morning. In that motion, Respondent asserted, among other things, that her delay in responding to the Petition for Disciplinary Action was the result of her having focused her energy on securing counsel to represent her in an unrelated criminal matter. Respondent further argued in the motion that default proceedings are not intended to punish a party for failing to comply with procedure and that a determination on the merits is preferred. Moreover, Respondent disagreed "that there was a material breach of the [CDA]" or that she had violated the MLRPC. Respondent also asserted that the Commission "violated her substantive due process rights by not allowing her to respond [to] the allegations of breach prior to the filing of public charges ... wherein the Commission refused to afford her a Legislative Continuance[ ] as required and mandated pursuant to [CJ] [§] 6–402."

Some six minutes later, after discussing with Bar Counsel where Respondent might be found, Judge Northrop, noting for the record that the motion to reconsider was "unsigned" and "not properly docketed, not properly filed, and only submitted today," denied the motion, "the respondent having failed to appear." In proceeding with the ex parte hearing, Judge Northrop admitted into evidence Bar Counsel's sole exhibit consisting of a Request for Admission of Facts and Genuineness of Documents with nineteen documents attached, including, relevant here, the correspondence between and among Bar Counsel, the Commission, and Respondent, discussed above.

Respondent returned to the courtroom at 10:12 a.m. By that time, Judge Northrop had concluded the hearing. The judge informed Respondent of that fact and, after denying Respondent's oral request to re-open the hearing, excused the parties.

On December 17, 2011, Judge Northrop issued his written findings of fact and conclusions of law in the matter.

### Factual Findings and Conclusions of Law

Judge Northrop's Opinion and Order reflects the following findings of fact. On July 21, 2010, the Attorney Grievance Commission approved a CDA between Bar Counsel and Respondent, entered into pursuant to Rule 16–736. Respondent voluntarily entered into the CDA, which related to two separate matters, and therein acknowledged several violations of the Rules of Professional Conduct.

As described in the CDA, the first matter arose from a complaint filed by Dr. Walesia L. Robinson concerning Respondent's conduct in connection with her representation of Dr. Robinson. Respondent acknowledged that she had failed to act with reasonable diligence in representing Dr. Robinson, failed to keep Dr. Robinson reasonably informed, and, after being discharged by Dr. Robinson, failed to respond promptly to requests made by Dr. Robinson and her new counsel for Dr. Robinson's file and an accounting of Dr. Robinson's retainer fee payments. These failures, as Respondent acknowledged in the CDA, amounted to violations of MLRPC 1.3, 1.4(a)(2), and 1.16(d).

The second matter to which the CDA referred was initiated by Bar Counsel and concerned Respondent's not properly maintaining a trust account.[7] In the CDA, Respondent had acknowledged her failure to comply with the trust account requirements pursuant to Maryland Rule 16–606.1.[8] She fur-

---

**7.** The hearing judge's findings and conclusions do not indicate how the Commission learned that Respondent had not properly maintained her trust account. The Petition for Disciplinary or Remedial Action indicates, though, that the "matter involved overdraft reports received by Bar Counsel in September and November of 2009 concerning Respondent's attorney trust account at M & T Bank." Upon receipt of such notices, Bar Counsel unvaryingly performs an audit of the attorney's financial records, to a greater or lesser degree, as required by the circumstances. See Md. Rule 16–612.

**8.** Maryland Rule 16–606.1, entitled "Attorney trust account record-keeping," with specificity requires an attorney, in part: to "create[]

ther "acknowledge[d] that she knowingly failed to respond to lawful demands for information from a disciplinary authority, in violation of [MLRPC] 8.1(b)."

The CDA provided that "Respondent consented to have her law practice monitored by another attorney." Judge Northrop found that Respondent failed to satisfy that monitoring condition by "fail[ing] to provide the law practice monitor designated to report to Bar Counsel with access to information he needed to fulfill his reporting obligations."

Based on the foregoing findings of fact, Judge Northrop made the following conclusions of law. With respect to Dr. Robinson's complaint, Respondent violated MLRPC 1.3 [9] (diligence), 1.4(a)(2) [10] (communication), and 1.16(d) [11] (declining or terminating representation), based on her signed acknowledgment in the CDA. In addition, with respect to the trust account irregularities, Respondent violated MLRPC 1.15(a) [12]

———

and maintain[ ]" records "for the receipt and disbursement of funds of clients or of third persons"; to "create[ ] a monthly reconciliation of all attorney trust account records, client matter records, ... and the adjusted month-end financial institution statement balance." The rule also requires that a record be maintained for a period of five years from the date of its creation.

9. MLRPC 1.3 provides:
 A lawyer shall act with reasonable diligence and promptness in representing a client.

10. MLRPC 1.4 provides, in pertinent part:
 (a) A lawyer shall:
 * * *
 (2) keep the client reasonably informed about the status of the matter.

11. MLRPC 1.16(d) provides:
 Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

12. MLRPC 1.15(a) provides:

(safekeeping property) and MLRPC 8.1(b)[13] (bar admission and disciplinary matters), also based on her signed acknowledgment in the CDA. Respondent violated MLRPC 8.4(a)[14] (misconduct) by violating the previously mentioned rules. Finally, Respondent violated MLRPC 8.4(d) (misconduct) by failing to comply with the conditions of the CDA, including her failure to provide the law practice monitor with access to information needed for his reports, which constituted conduct prejudicial to the administration of justice. Based on Respondent's repeated instances of uncooperative behavior and tardiness, Judge Northrop did not find any mitigating factors.

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

13. MLRPC 8.1 provides, in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\*　　\*　　\*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

14. MLRPC 8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; [or]

\*　　\*　　\*

(d) engage in conduct that is prejudicial to the administration of justice.

## II.

 This Court has original and complete jurisdiction over attorney discipline proceedings. "[W]e accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Att'y Griev. Comm'n v. Nelson,* 425 Md. 344, 358, 40 A.3d 1039, 1047 (2012) (alteration in original) (quoting *Att'y Griev. Comm'n v. Stern,* 419 Md. 525, 556, 19 A.3d 904, 925 (2011)). As neither the Commission nor Respondent has excepted to the hearing judge's finding of facts, which are not clearly erroneous, the factual findings are "established for the purpose of determining appropriate sanctions." Md. Rule 16–759(b)(2)(A).

### A. Respondent's Exceptions

Respondent has not filed any exceptions that pertain directly to the hearing judge's findings of fact or conclusions of law, but she has filed exceptions alleging procedural errors committed by the Commission and the hearing judge. We shall consider each exception, in turn.

### i. Legislative Continuance

 Respondent first argues that, as a member of the Maryland House of Delegates representing herself in this matter, she was entitled to, but was denied, a legislative continuance, pursuant to CJ § 6–402 and Rule 2–508(d). Respondent asserts in particular that the Commission violated the "substantive and procedural due process rights of Ms. Alston that are outlined in Rule 16–736(f)(2)," *see supra* note 2, by denying her request for a legislative continuance to respond to Bar Counsel's request to revoke the conditional diversion agreement and "be heard on the underlying facts regarding the alleged violation of the diversion agreement." [15] We overrule this exception.

---

**15.** At oral argument before this Court, Respondent informed this Court that she had solicited and received an advice letter from the Office of the Attorney General regarding whether she was entitled to a continuance pursuant to CJ § 6–402, asserting that the letter supported her

In addressing the exception, we have assumed without deciding, solely for the purposes of resolving the exception, that Respondent would have been entitled to a legislative continuance in order to respond to Bar Counsel's petition to revoke the CDA had it been requested timely and expressly. The record, however, shows that Respondent's invocation of the exception was tardy (a consistent qualifier of much of Respondent's conduct here).

The legislative continuance provided by CJ § 6–402 is not self-executing. Subsection 6–402(f) states: "The attorney may exercise any right under this section *after filing a motion or letter with the appropriate court or administrative agency* without the attorney personally appearing." (Emphasis added). And subsection (e) provides: "The attorney may waive the benefit of this section." *See also* Md. Rule 2–508(d) ("*Upon request* of an attorney of record who is a member or desk officer of the General Assembly, a proceeding ... shall be continued." (Emphasis added)).

Bar Counsel filed the petition to revoke the CDA on January 18, 2011, six days after commencement of the 2011 session of the General Assembly. The record shows, and Respondent does not deny, that she timely was made aware of the petition, her right to respond to it, and the time within which to respond, i.e., on or before February 9, 2011. Indeed, Respondent timely sought a continuance from the Commission sometime on or before February 8, 2011.

Important for present purposes, the record does not contain Respondent's request for continuance, and, even now, Respondent does not assert that she filed the continuance request in writing, as CJ § 6–402 requires, or even that she relied

position. This Court granted Respondent leave to submit the advice letter within one week of oral argument, that is, by June 14, 2012. Respondent timely submitted the letter, which was dated March 24, 2011. She also submitted at that time a "Supplement to Oral Arguments." Although we do not consider Respondent's supplemental arguments, as they were unsolicited and filed without leave to do so, we have accepted the advice letter and shall consider it as part of the record.

expressly on CJ § 6–402 or Rule 2–508(d) in making an oral request. Without a record of how she made the request, we also have no way of knowing if, in doing so, Respondent alerted the Commission that she sought the continuance pursuant to CJ § 6–402 and/or Rule 2–508(d). All we do know is that the Commission made no mention of the statute or rule in the February 8, 2011 letter informing Respondent of the grant of a one-week continuance.

Respondent does not deny receipt of the February 8 letter, and nothing in the record suggests that upon receipt she formally (or even informally) objected that the continuance was insufficient and that she was entitled to a continuance until April 21, 2011 (ten days after adjournment of the 2011 session, as provided by CJ § 6–402 and/or Rule 2–508(d)). Instead, Respondent let the date for response come and go without responding to the petition to revoke the CDA. Moreover, she sought no further continuance of the time within which to respond—notwithstanding she was on notice that the Commission may well, as ultimately it did, revoke the petition. Given all that we know about what Respondent did, and more important, did not do in a timely fashion, it is impossible for us to find that she properly sought and was denied a legislative continuance to respond to the petition to revoke the CDA.

For much the same reasons, there is no merit to Respondent's claim that she was denied "a full and fair opportunity to be heard on the underlying facts regarding the alleged violation of the diversion agreement." We have said that a respondent is not denied due process as long as she "is given notice and an opportunity to defend in a full and fair hearing following the institution of disciplinary proceedings in this Court." *Att'y Griev. Comm'n v. Harris*, 310 Md. 197, 202, 528 A.2d 895, 897 (1987).[16] Respondent was given ample notice

---

16. We also have made clear that, so long as formal charges of misconduct—which do not exist against an attorney until a petition is docketed in this Court—are "sufficiently clear and specific so as to reasonably inform the respondent what he is compelled to answer for and defend against, and there are no substantive transgressions of the Commission's own Guidelines or . . . Rules, the respondent is generally preclud-

and full opportunity to respond to Bar Counsel's December 21, 2010 letter informing her of Bar Counsel's intention to declare a proposed default on the CDA. That letter set forth precisely the ways in which, in Bar Counsel's view, Respondent was in material default of the CDA. In the same letter, Bar Counsel informed Respondent that she was entitled to submit in writing, by January 5, 2011, a response "to refute Bar Counsel's determination and/or to offer an explanation or proposed remedy satisfactory to Bar Counsel." Respondent did not respond to the notice-of-intent letter. Nor did Respondent respond to the subsequently-filed Petition to Revoke the CDA, although she was informed of her right to do so. When Respondent received from the Commission additional time within which to respond, even then she did not act timely, either by submitting a response or, at the least, seeking still more time to respond.

■ Our conclusion that Respondent was not denied due process is unchanged by the fact that Respondent wrote to the Commission *after* the Commission revoked the CDA and, in seeking reconsideration and a stay of the Commission's revocation decision, formally invoked at that juncture her entitlement to a legislative continuance. Respondent offers no reason, much less authority, to support her entitlement to a post hoc invocation of a legislative continuance in order to mount an after-the-fact defense to Bar Counsel's assertions that she

---

ed from contesting what occurred in the preliminary stages ... leading to the filing of charges." *Att'y Griev. Comm'n v. Harris*, 310 Md. 197, 203, 528 A.2d 895, 898 (1987) (internal citation and quotation marks omitted). *See also Att'y Griev. Comm'n v. Calhoun*, 391 Md. 532, 554, 894 A.2d 518, 531 (2006).

We further note Maryland Rule 16–754(b), which states: "It is not a defense or ground for objection to a petition that procedural defects may have occurred during disciplinary or remedial proceedings prior to the filing of the petition." Bar Counsel does not invoke this provision in his response to Respondent's exception and does not argue that Respondent's exception invokes what is merely a "procedural defect." Given our disposition of this exception, it is unnecessary to decide whether Respondent's exception implicates a mere procedural, rather than substantive, defect in connection with the Commission's revocation of the CDA.

was in material default of the CDA. Certainly we are aware of none.

The most process due Respondent at that late juncture was review by the Commission of her request for reconsideration and stay of the Commission's decision to revoke the CDA. The Commission considered Respondent's request and denied it. In doing so, the Commission did not err.

Rule 16–736(f)(3) states:

If the Commission concludes that the attorney is in material default of the [Conditional Diversion] Agreement, it *shall* revoke the Agreement, revoke the stay of the disciplinary or remedial proceeding, and direct Bar Counsel to proceed in accordance with Rule 16–751, or as otherwise authorized by the Rules in this chapter.

(Emphasis added). By its plain language, the rule would seem to *require* the Commission, on a finding of material default, to revoke a CDA so long as the attorney is given notice and an opportunity to defend. Respondent was given notice and the opportunity to defend against the assertion of Bar Counsel that she was in material default of the CDA, but, for reasons known only to her, she did not offer a defense.

Even if Rule 16–736 allows for exercise of discretion on the part of the Commission to reconsider revocation of a CDA, the present case does not suggest an abuse of discretion. We use as our guidepost the standard by which we review motions for a new trial or to reopen proceedings, whether in a civil or criminal matter. The decision to deny such motions lay within the sound discretion of the court deciding the motion, and such decision is not disturbed by the reviewing court, absent a showing of an abuse of discretion. *See, e.g., Washington v. State,* 424 Md. 632, 667–68, 37 A.3d 932, 952–53 (2012); *Gray v. State,* 388 Md. 366, 382–83, 879 A.2d 1064, 1073 (2005); *I.O.A. Leasing v. Merle Thomas Corp.,* 260 Md. 243, 249, 272 A.2d 1, 4 (1971). Abuse of discretion is the exercise of discretion that is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Touzeau v. Deffinbaugh,* 394 Md. 654, 669, 907 A.2d 807, 816 (2006) (quoting *Jenkins v. City of College Park,* 379 Md. 142, 165, 840

A.2d 139, 153 (2003)); *see also Gray*, 388 Md. at 383, 879 A.2d at 1073 (stating that a decision to reopen a post-conviction proceeding is discretionary, and an appellate court is not to disturb the decision unless it is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable") (quoting *Dehn v. Edgecombe*, 384 Md. 606, 628, 865 A.2d 603, 616 (2005)).

Given Respondent's dilatory conduct in connection with the petition to revoke, and her arguments in support of reconsideration—limited to (1) a belated assertion of the right to a legislative continuance and (2) a meritless allegation of lack of due process—the Commission did not abuse its discretion in denying her request for reconsideration of its revocation decision.

### ii. Jurisdiction of the Hearing Judge

■ Respondent's second exception challenges Judge Northrop's jurisdiction to hear the disciplinary action. Respondent asserts that, because the hearing was held beyond the 120–day period after service of this Court's order designating the hearing judge, *see* Md. Rule 16–757(a),[17] the judge was not authorized to hear the case and make findings of fact and conclusions of law. Respondent suggests that, because both Judge Northrop and Bar Counsel knew of this defect, the hearing should have been postponed until the judge acquired jurisdiction through an order from this Court extending the period within which to conduct the hearing.

The Commission counters simply that this Court already decided this issue when, by order dated December 5, 2011, this Court granted, *nunc pro tunc*, the Commission's motion

---

**17.** Maryland Rule 16–757, entitled "Judicial hearing," provides, in pertinent part:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge.

to extend the time. We agree. As Respondent has acknowledged, an order of this Court extending the period within which to hear the matter would, and in this case did, eliminate any procedural or jurisdictional defect based on non-compliance with Maryland Rule 16–757(a). Therefore, this exception is overruled as moot.

### iii. Denial of Respondent's Motion to Vacate Order of Default

■ Respondent's third and final exception alleges that Judge Northrop abused his discretion when he refused to vacate the Order of Default and reopen the matter when Respondent arrived 42 minutes late for the hearing on November 17, 2011. The Commission, not surprisingly, disagrees and asserts that Judge Northrop acted well within his discretion in denying the motion to vacate, based on "Respondent's history of 'lateness, non-responsiveness, and dilatory practice.' " (Quoting the hearing judge's Findings of Fact and Conclusions of Law).

■ We agree with the Commission. Trial courts have broad discretion "to determine whether to grant or deny a motion to vacate an order of default." *Att'y Griev. Comm'n v. Ward,* 394 Md. 1, 20, 904 A.2d 477, 489 (2006). As Judge Northrop noted in his findings, Respondent's motion was untimely as it was "filed" nearly one month after the 30–day period within which, pursuant to Maryland Rule 2–613(d),[18] a defendant may move to vacate an order of default. Moreover, the judge noted that Respondent failed to appear when the matter was called and the judge ruled on the Motion to Vacate. We see no abuse of discretion in the hearing judge's denial of Respondent's untimely motion.[19] Accordingly, we overrule Respondent's third and final exception.

---

**18.** Maryland Rule 2–613(d) provides that "[t]he defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim."

**19.** We have reviewed Respondent's untimely motion and note that Respondent failed to present a compelling reason, as Judge Northrop

## B. The MLRPC Violations

We review next Judge Northrop's conclusions of law, to which, unlike factual findings, we owe no deference. *Att'y Griev. Comm'n v. Brown*, 426 Md. 298, 315, 44 A.3d 344, 354 (2012). For the reasons that follow, we agree with Judge Northrop's conclusions that Respondent violated MLRPC 1.3, 1.4(a)(2), 1.15(a), 1.16(d), 8.1(b), and 8.4(a) and (d).

MLRPC 1.3 provides that a lawyer must act with reasonable diligence and promptness when representing a client. Respondent acknowledged in the CDA that she did not act with reasonable diligence while representing Dr. Robinson because she failed to keep Dr. Robinson informed and failed to answer Dr. Robinson's requests for information. Her admitted failure violates MLRPC 1.3. *See Att'y Griev. Comm'n v. Agiliga*, 422 Md. 613, 617, 623, 31 A.3d 103, 105, 109 (2011) (concluding that an attorney violated MLRPC 1.3 when he failed to disburse settlement funds, failed to pay health care providers, and did not respond to health care providers' inquiries).

MLRPC 1.4(a)(2) requires an attorney to keep a client reasonably informed about the status of a matter. Respondent again acknowledged in the CDA that she violated this rule when she failed to keep Dr. Robinson informed about Respondent's ongoing representation of her. *See Att'y Griev. Comm'n v. Camus*, 425 Md. 417, 429, 42 A.3d 1, 8 (2012) (concluding that an attorney violated MLRPC 1.4(a)(2) when she did not comply promptly with requests for information from her client).

---

evidently agreed, to excuse her failure to answer the petition for disciplinary action or to move to vacate the Order of Default within the thirty-day period provided for by Rule 2–613(d). Respondent asserted in her motion that, around the same time as the court entered the Order of Default, Respondent learned she was the subject of a criminal investigation unrelated to the present case, was attempting to secure counsel for that, and was subsequently indicted for unrelated charges. Respondent also supplied a blanket denial of having committed any ethical violations, despite her acknowledgment of those violations in the CDA.

MLRPC 1.15(a) requires an attorney to maintain client funds in a trust account, separate from the attorney's personal and operating funds. Respondent admitted in the CDA that she failed to comply, in material respects, with the attorney trust account record-keeping requirements set out in Maryland Rule 16–606.1. Respondent, therefore, violated MLRPC 1.15(a). *See, e.g., Att'y Griev. Comm'n v. Zuckerman,* 386 Md. 341, 371–72, 872 A.2d 693, 711–12 (2005) (concluding that an attorney's failure properly to handle settlement funds violated MLRPC 1.15(a)).

MLRPC 1.16(d) provides that, after services are terminated, an attorney shall take reasonable steps to protect a client's interests, including surrendering papers and property to which the client is entitled. In the CDA, Respondent admitted that she violated this rule by failing to provide Dr. Robinson's file to either Dr. Robinson or her new counsel. Such a failure indeed violates the clear mandates of the rule. *See Att'y Griev. Comm'n v. De La Paz,* 418 Md. 534, 555, 16 A.3d 181, 193–94 (2011) (holding that an attorney who did not protect his client's interests, in part, by failing to return the client's file, violated MLRPC 1.16(d)).

MLRPC 8.1(b) provides that a knowing failure to respond to a lawful demand for information from a disciplinary authority is a violation of the MLRPC. Judge Northrop found that Respondent failed to provide information that Bar Counsel requested, including, pursuant to the CDA, sufficient information for the attorney monitor to oversee Respondent's legal practice. This conduct violated the plain language of MLRPC 8.1(b). *See Att'y Griev. Comm'n v. Van Nelson,* 425 Md. 344, 362, 40 A.3d 1039, 1049 (2012) (concluding that an attorney who never responded to Bar Counsel's letters during the initial investigation or to an interview request violated MLRPC 8.1(b)).

MLRPC 8.4(a) provides that it is professional misconduct to violate any rule. By having violated the previously mentioned rules, Respondent also violated MLRPC 8.4(a). *See Att'y Griev. Comm'n v. McGlade,* 425 Md. 524, 538, 545, 42 A.3d

534, 543, 547 (2012) (holding that because an attorney violated other provisions of the MLRPC, he necessarily violated MLRPC 8.4(a)).

Lastly, MLRPC 8.4(d) provides that conduct "prejudicial to the administration of justice" is professional misconduct. Failing to comply with the CDA was prejudicial to the administration of justice because it reflected adversely on Respondent's fitness as a lawyer and impeded the Commission's ability to ensure that Respondent's activities presented no continuing harm to the public. Moreover, Respondent's disregard of the requirements of the CDA, particularly without any attempt at explanation, demonstrated a lack of trustworthiness. Respondent, therefore, violated MLRPC 8.4(d). *See Att'y Griev. Comm'n v. Potter,* 380 Md. 128, 152, 844 A.2d 367, 381 (2004) (holding that conduct that "reflect[s] adversely on [Respondent's] . . . trustworthiness, and fitness as a lawyer . . . [is] conduct prejudicial to the administration of justice").

## III.

Our remaining task is to determine the appropriate sanction. The Commission recommends indefinite suspension and, in support of that sanction, directs us to *Attorney Grievance Commission v. Khandpur,* 421 Md. 1, 25 A.3d 165 (2011). Khandpur was indefinitely suspended, *id.* at 26, 25 A.3d at 180, after the revocation of a CDA, for safekeeping property violations, mismanagement of a trust account, lack of diligence, and failure to respond to Bar Counsel's requests, *id.* at 7–8, 25 A.3d at 168–69. The Commission also recommends that, should we permit Respondent to be eligible for reinstatement, we should impose at least a one-year period from the effective date of the suspension before Respondent could seek reinstatement. Respondent recommends that this Court should issue a reprimand because she has no previous ethical violations.

When sanctioning an attorney for a violation of the Rules of Professional Conduct, we have stated that the purpose of imposing sanctions is to protect the public. *Id.* at 17–

18, 25 A.3d at 175. Sanctions depend on the particular facts and circumstances of each case. *E.g., Att'y Griev. Comm'n v. Steinberg,* 385 Md. 696, 704, 870 A.2d 603, 607 (2005).

■ We agree with the Commission that indefinite suspension is the appropriate sanction for Respondent. Respondent, by agreeing to the CDA, acknowledged that her conduct constituted multiple ethical violations, and we have so concluded. The hearing judge found no mitigating factors. Rather, he noted the aggravating consideration of Respondent's "repeated instances of lack of cooperation and the continual habit of lateness, non-responsiveness, and dilatory practices." Respondent, after being notified of her breaches and the Commission's intent to file a petition to revoke the agreement, consistently chose not to participate in these proceedings and belatedly, past the "eleventh hour," sought to delay them. Indefinite suspension is appropriate given such disregard for these proceedings. Prior attorney grievance matters in this Court support our conclusion that indefinite suspension is the appropriate sanction for Respondent's violations.

In *Attorney Grievance Commission v. Kovacic,* 389 Md. 233, 884 A.2d 673 (2005), Kovacic abandoned representation of a client, failed to complete work, failed to communicate with a client, failed to respond to inquiries from Bar Counsel, and never responded to the disciplinary petition or moved to vacate the default order entered. *Id.* at 235–36, 884 A.2d at 674. Ultimately, we agreed with the hearing judge's conclusions that Kovacic violated MLRPC 1.3, 1.4, and 8.1. *Id.* at 236, 884 A.2d at 675. After noting that Kovacic had been absent before the hearing judge and no mitigating factors had been found, we held that indefinite suspension was the appropriate sanction because it "will protect the public." *Id.* at 239–40, 884 A.2d at 676–77.

Similarly in *Attorney Grievance Commission v. Lee,* 393 Md. 546, 903 A.2d 895 (2006), Lee failed to act diligently, to communicate with his client, to return the client's file, and to respond to Bar Counsel's inquiries. *Id.* at 555–57, 563, 903 A.2d at 901–02, 905. We concluded that Lee's actions violated

MLRPC 1.3, 1.4, 1.16, 3.2, 8.1(b), and 8.4(d). *Id.* at 563, 903 A.2d at 905. Relying on *Kovacic,* we determined that the proper sanction for Lee, as well, was indefinite suspension. *See id.* at 566, 903 A.2d at 907 (holding that the violations were similar to those in *Kovacic* and, because Lee violated more ethical rules than Kovacic, there being no mitigating factors found, indefinite suspension was the proper sanction).

Finally, in *Attorney Grievance Commission v. Rose,* 383 Md. 385, 859 A.2d 659 (2004), we sanctioned an attorney who had overdrawn his trust account. *Id.* at 389–90, 859 A.2d at 661–62. We agreed with the hearing judge's conclusions that Rose had violated MLRPC 1.15(a), 8.1(b), and 8.4(d), based on his improper maintenance of his trust account as well as his additional failure to respond to Bar Counsel's requests. *Id.* at 391–92, 859 A.2d at 662–63. We then determined that the appropriate sanction in that case, too, was indefinite suspension, with a right to apply for reinstatement after six months, because there was "no allegation of dishonesty or misappropriation." *Id.* at 392, 859 A.2d at 663.

Similar to the cases we have discussed, Respondent violated multiple provisions of the MLRPC. Indeed, Respondent has violated many of the same provisions as did the attorneys in *Kovacic, Lee,* and *Rose.* Therefore, indefinite suspension is the appropriate sanction, and we order that sanction, accordingly.[20]

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE**

---

**20.** We have not specified any time period after which Respondent may apply for reinstatement, as the Commission has requested. This is because we do not wish to imply that merely after a certain period of time has elapsed Respondent shall be considered favorably for reinstatement. As always, should Respondent seek reinstatement, we will consider then the relevant factors pursuant to Rule 16–781(g), including Respondent's "subsequent conduct and reformation."

# ATTORNEY GRIEVANCE COMMISSION AGAINST RESPONDENT, TIFFANY T. ALSTON.