800 A.2d 747

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Gregory Scott ANGST.**

**No. 25, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 12, 2002.

Melvin Hirshman, Bar Counsel and Gail D. Kessler, Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for Petitioner.

No argument on behalf of Respondent.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

Respondent, Gregory Scott Angst ("Angst"), was admitted to the Bar on December 17, 1991. On September 25, 2001, the Attorney Grievance Commission, acting pursuant to Maryland

Rule 16–709(a), filed a petition for disciplinary action against respondent, charging numerous violations of the Maryland Rules of Professional Conduct ("MRPC"), including MRPC 1.2 (Scope of representation),[1] MRPC 1.3 (Diligence),[2] MRPC 1.4 (Communication),[3] MRPC 1.15 (Safekeeping property),[4]

---

1. Rule 1.2 provides:

   (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

   (b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

   (c) A lawyer may limit the objectives of the representation if the client consents after consultation.

   (d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

   (e) When a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

2. Rule 1.3 provides:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4 provides:

   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. Rule 1.15 provides:

   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropri-

MRPC 8.1 (Bar admission and disciplinary matters),[5] and MRPC 8.4(a)(b)(c) & (d) (Misconduct).[6] The charges involved the complaints of Gertrude Baskerville, Linda Harten, and Bar Counsel. This Court referred the complaint to Judge William D. Quarles of the Circuit Court for Baltimore City for a hearing to determine findings of fact and conclusions of law pursuant to Maryland Rule 16–709(b).

---

ately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

5.  Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

6.  Rule 8.4 provides in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

The hearing before Judge Quarles was held on January 14, 2002. Respondent failed to appear at the hearing. Bar Counsel introduced excerpts of the transcripts from the Inquiry Panel hearings and Requests for Admissions of Facts and Genuineness of Documents in evidence. Judge Quarles found by clear and convincing evidence that Angst's conduct constituted violations of Rules 1.2(a), 1.3, 1.4(a)(b), 1.15(b), 8.1(a)(b) and 8.4(a)(b)(c) and (d) of the MRPC. Neither party took exception to Judge Quarles's Findings of Fact and Conclusions of Law. Respondent did not appear at oral argument before the Court.

## I. Facts

Judge Quarles's Findings of Fact and Conclusions of Law are as follows:

### BC Docket No. 2000–213–3–9

### Complaint of Gertrude Baskerville

### Findings of Fact

In the matter of the complaint of Gertrude Baskerville, Petitioner alleges that Respondent violated Rules 1.2(a), 1.3, 1.4(a)(b), 8.1(a)(b) and 8.4(a)(c) of the Maryland Rules of Professional Conduct by his inaction and neglect in preparing and filing the late David Matthews' quit claim deed, transferring 1305 North Linwood Avenue to Mr. Matthews' daughter, Gertrude Baskerville and his granddaughter, Rachael Baskerville.

On or about August 26, 1998, Respondent met with the late David Matthews at his residence and was retained to prepare a quit claim deed transferring 1305 North Linwood Avenue to Mr. Matthews' daughter, Gertrude Baskerville and his granddaughter, Rachael Baskerville. At the time Respondent was retained, Matthews was ill and had undergone treatment for cancer. Respondent charged and was paid a flat fee of $200 to prepare and file the quit claim deed. In early November 1998, Respondent met with Matthews at his residence and had him execute the quit claim

deed dated September 8, 1998. Thereafter Respondent never recorded the quit claim deed at the Land Records Office in Baltimore City. Joyce Somerville, Matthews' significant other, made numerous telephone calls on behalf of Matthews regarding the status of the filing of the quit claim deed. Respondent failed to return Somerville's telephone calls. Respondent had the signatures of Matthews and Somerville notarized in his office on or about March 26, 1999, four months after the quit claim deed had been executed and just prior to giving Somerville a copy of the deed. At the time of Matthews' death on April 10, 1999, Respondent had not recorded the quit claim deed and had lost the original.

Petitioner's Investigator, Sterling H. Fletcher, spoke with Respondent concerning the recording of the late Matthews' deed. Respondent misrepresented to Mr. Fletcher that he had recorded the deed. Therefore by letters dated December 7, 1999 and December 27, 1999, Respondent was asked to provide the date when the deed was recorded and copies of any receipts for that recording to the Office of Bar Counsel. Respondent never responded to those letters. Thereafter Mr. Fletcher left telephone messages for Respondent on January 12, January 24, January 27 and February 1, 2000 to schedule an interview with Respondent and review his file on Matthews. However Respondent never returned those telephone messages.

An Inquiry Panel was convened on August 8, 2000. Respondent failed to appear at that hearing and misrepresented to the Panel by telephone conference call that he had never received notice of that hearing. The hearing was rescheduled for November 20, 2000 and at that hearing, Respondent admitted that he did receive notice of the Inquiry Panel's August 8, 2000 hearing. However he did not open the notice letter. Further, Respondent misrepresented to the Office of Bar Counsel that the Matthews' file had been closed and was in storage at his home when, in fact, it had never left his office.

### Conclusions of Law

By his conduct, Respondent violated all the Rules of Professional Conduct charged by Petitioner in the Petition for Disciplinary Action. Respondent failed to abide by the scope of the representation, in violation of Rule 1.2(a) by failing to record Matthews' quit claim deed. Respondent's failure to record Matthews' quit claim deed and thereafter losing the original demonstrates a lack of diligence in violation of Rule 1.3. Respondent violated Rule 1.4(a)(b) by failing to communicate with Matthews and keep him informed of the status of his matter, despite repeated efforts by Matthews' significant other to speak with him. Respondent's misrepresentation to the Inquiry Panel on August 8, 2000 that he had not received notice of the hearing when, in fact, he had but had chosen not to open the notice, was in violation of Rule 8.4(c). Further, Respondent's misrepresentation to Bar Counsel's Investigator that the Matthews deed had been recorded when, in fact, it had not and the misrepresentation that the Matthews file was in storage at his home when it was still in his office violated Rules 8.1(a) and 8.4(c). Further, Respondent violated Rule 8.1(b) by his wilful failure to respond to Petitioner's letters. Respondent's conduct throughout the handling of the Matthews' quit claim deed matter and his conduct with Petitioner violated Rule 8.4(a).

### BC Docket No. 2001-24-4-9

### Complaint of Linda Harten

### Findings of Fact

In the matter of the complaint of Bar Counsel, Petitioner alleges that Respondent violated Rules 8.4(d) and 8.1(b) of the Maryland Rules of Professional Conduct by failing to pay Davis and Harten Reporting Company (hereinafter referred to as Davis and Harten) and by failing to respond to the Office of Bar Counsel.

In 1999 Respondent represented Patricia Land in a civil suit against Kevin Huck. On March 16, 1999 Respondent

ordered the deposition of Patricia Land from Davis and Harten. By invoice dated March 28, 1999 Respondent was billed by Davis and Harten $88.60 for a copy of Land's deposition. Respondent did not pay the $88.60 bill. On or about March 31, 1999 Respondent retained Davis and Harten to take the deposition of Kevin Huck and ordered a copy of the deposition of Wendy Schuller. By invoice dated April 16, 1999, Davis and Harten billed Respondent $165.10 for the deposition of Huck and a copy of the Schuller deposition. Respondent did not pay the $165.10 due to Davis and Harten. On April 12, 1999, Respondent ordered a copy of the deposition of Dr. Edward F. Aulisi from Davis and Harten. By invoice dated April 30, 1999, Respondent was billed $30.40 for Aulisi's deposition. Respondent did not pay the $30.40 bill. Although Davis and Harten provided copies of depositions ordered by Respondent and took the deposition of Huck, Respondent did not pay Davis and Harten's bills. Therefore Davis and Harten filed suit against Respondent in the District Court of Maryland for Anne Arundel County for failure to pay their bills. On April 28, 2000, the District Court of Maryland for Anne Arundel County entered an Affidavit Judgment in favor of Davis and Harten in the amount of $284.10, plus costs of $40 against Respondent. As of the Inquiry Panel hearing held on May 31, 2001, Respondent had not paid that judgment entered against him.

By letters dated July 18 and August 4, 2000, Respondent was asked to provide a written response to the Office of Bar Counsel concerning the judgment entered against him in favor of Davis and Harten. Respondent did not respond to the Office of Bar Counsel's letters of July 18 and August 4, 2000.

### *Conclusions of Law*

By his conduct Respondent violated all the Rules of Professional Conduct alleged by Petitioner. Respondent's failure to pay Davis and Harten for providing copies of the Land, Schuller and Aulisi depositions as well as his failure

to pay the bill for taking the deposition of Huck was prejudicial to the administration of justice in violation of Rule 8.4(d). Respondent's failure to respond to the Office of Bar Counsel's requests for a written response concerning the judgment entered against him in favor of Davis and Harten was in violation of Rule 8.1(b).

## BC Docket No. 2001-77-3-9

### Complaint of Bar Counsel

### Findings of Fact

In the matter of the complaint of Bar Counsel, Petitioner alleges that Respondent violated Rules 1.15(b), 8.1(a)(b) and 8.4(b)(c)(d) of the Maryland Rules of Professional Conduct by failing to withhold and maintain employee withholding income taxes in trust, failing to pay withheld income tax monies to the Comptroller of the Treasury (hereinafter referred to as Comptroller), failing to file returns, and failing to maintain a separate ledger account for the withholdings as required by § 10–906(c) of the Tax General Article.[7]

Since February 1998 Respondent has maintained an office for the practice of law. In June 1998 at Respondent's request, the Comptroller of the Treasury of the State of Maryland opened an employee withholding tax account in the name of "the law offices of Gregory S. Angst", effective March 2, 1998. Respondent's withholding account was placed on a quarterly filing and a quarterly payment schedule for Maryland income taxes withheld from Respondent's employees' wages. Respondent did not pay his quarterly withholding taxes for the year 1998. Respondent failed to

---

7. Maryland Code (1988, 1997 Repl.Vol., 2001 Supp.) Section 10–906(c) of the Tax General Article provides:

Separate account required.—An employer or payor who withholds income tax shall keep a separate ledger account for withholdings that indicates clearly:

    (1) the amount of income tax withheld; and

    (2) that the income tax withheld is the property of the State.

file an MW–508 form which is the end of year reconciliation and the W–2s to be attached for each employee for the year 1998.

In 1999 Respondent's filing status was changed to annual filing. Respondent through a telephone conversation with the Comptroller gave the actual tax due for 1998. However, Respondent failed to file a return and pay the amount due. By a telephone call of August 24, 1998 Respondent informed the Comptroller that he would contact his accountant and would call back the next day concerning the delinquent withholding tax payment. The Comptroller did not receive a return telephone call from Respondent on August 25, 1998 and another call was placed to Respondent on September 8, 1998. The Comptroller left two further telephone messages on February 5 and March 25, 1999 without a return call from Respondent.

On April 16, 1999 the Comptroller was able to speak to Respondent by telephone at which time Respondent indicated he would file his employee withholding tax returns that week. However, Respondent did not do so. The Comptroller left telephone messages at Respondent's office on May 20 and June 3, 1999. However Respondent did not return those telephone calls. By letter dated June 7, 1999 the Comptroller sent a delinquent notice to Respondent to which Respondent did not respond. In a telephone conversation of July 29, 1999, Respondent indicated to the Comptroller that he would call back. However he did not do so.

On September 17, 1999 the [C]omptroller left another message with Respondent's office. On January 28, 2000, the Comptroller spoke with Respondent by telephone and advised that because of his failure to file and pay employee withholding taxes, they would have to file a complaint with the Attorney Grievance Commission. That conversation led Respondent to call the Comptroller back on February 1, 2000 at which time he gave the Comptroller the quarterly breakdown for his 1998 returns and gave the figure for his December 1999 returns. By check dated February 1, 2000 drawn on the account of Gregory Scott Angst, Attorney at

Law, Respondent paid $749.80 to the Comptroller for the taxes for the entire year of 1998 and submitted his quarterly MW–506 forms for the year 1998.

On March 9, 2000, the Comptroller called Respondent and left a message concerning the 1999 employee withholding returns and taxes to be paid. On March 10, 2000 the Comptroller heard from Respondent who indicated that he would file the delinquent return and pay the amount due. However Respondent did not do so. By telephone conversation on May 10, 2000 Respondent indicated to the Comptroller that he would have his accountant check his records and call them back by May 12, 2000. However the Comptroller did not hear from Respondent nor his accountant. On July 11, 2000 the Comptroller filed a Notice of Lien of Judgment for unpaid taxes against the law office of Gregory S. Angst in the Circuit Court for Baltimore City. The Comptroller claimed a lien for delinquent and unpaid taxes in the amount of $1,068.61, plus interest of $74.65 and penalty of $192.09 for a total of $1,335.35. On or about September 13, 2000 the Comptroller received payment from Respondent and released their lien.

As of the date of the Inquiry Panel hearing held on May 31, 2001 Respondent's employee withholding tax account was delinquent for his December 2000 return. The Comptroller had not received the withholding tax payment for the year 2000 nor did Respondent file the proper returns for that year.

Since 1998, Respondent has filed Maryland withholding tax returns late, has failed to file Maryland tax returns and has failed to pay trust fund income taxes withheld from his employees' wages to the Comptroller. From March 1998 through May 31, 2001, Respondent failed to fulfil his statutory obligations as an employer to withhold employees' state income taxes and to pay the appropriate amounts to the Comptroller. Respondent's actions and omissions violated § 10–906(a) of the Tax General Article. From March 1998 through May 31, 2001, Respondent failed to withhold and maintain income taxes in trust for the state as required by

§ 10–906(b) of the Tax General Article,[8] failed to maintain a separate ledger account for withholdings as required by § 10–906(c) of the Tax General Article [9] and regularly failed to file income tax withholding returns as required by § 10–817 of the Tax General Article.[10]

On August 23, 2000 Respondent misrepresented to Bar Counsel Investigator, Sterling H. Fletcher, that he had taken care of the Comptroller's lien when, in fact, it was not paid until September 13, 2000. By letters dated September 6 and October 6, 2000 Respondent was asked to provide a written response to the Office of Bar Counsel concerning the Comptroller's tax lien. Respondent did not respond to the Office of Bar Counsel's letters of September 6 and October 6, 2000.

### *Conclusions of law*

By his conduct Respondent violated all the Rules of Professional Conduct alleged by Petitioner. Respondent's failure to withhold and maintain employee withholding income taxes in trust for the state as required by § 10–906(b) of the Tax General Article and his failure to maintain a separate ledger account for the withholdings as required by § 10–906(c) of the Tax General Article violated Rule 1.15(b).

---

**8.** Maryland Code (1988, 1997 Repl.Vol., 2001 Supp.) Section 10–906(b) provides:

(b) *Tax withheld deemed held in trust.*—Any income tax withheld is deemed to be held in trust for the State by the employer or payor who withholds the tax.

**9.** Maryland Code (1988, 1997 Repl.Vol., 2001 Supp.) Section 10–906(c) provides:

(c) *Separate account required.*—An employer or payor who withholds income tax shall keep a separate ledger account for withholdings that indicates clearly:

(1) the amount of income tax withheld; and

(2) that the income tax withheld is the property of the State.

**10.** Maryland Code (1988, 1997 Repl.Vol.) Section 10–817 provides:

A person required to withhold income tax under § 10–906 of this title shall file an income tax withholding return.

Further, Respondent's failure to fulfil his statutory obligations as an employer to withhold employees' state income taxes and to pay the appropriate amounts owed to the Comptroller from March 1998 through May 31, 2001 as well as his failure to file the appropriate returns when due, violated Rules 8.4(b)(c) and (d). Further, Respondent violated Rule 8.1(a) when on August 23, 2000 he misrepresented to Bar Counsel's Investigator that he had taken care of the Comptroller's lien when, in fact, it was not paid until September 13, 2000. Respondent's failure to respond to the Office of Bar Counsel's letters of September 6 and October 6, 2000 is in violation of Rule 8.1(b).

In summary this Court finds that Respondent violated Maryland Rules of Professional Conduct 1.2(a), 1.3, 1.4(a)(b), 1.15(b), 8.1(a)(b) and 8.4(a)(b)(c) and (d) in connection with the three matters.

Neither party filed exceptions to the hearing judge's Findings of Fact and Conclusions of Law.

## II. Discussion

The only issue that remains is the appropriate sanction to apply under the facts and circumstances of this case. We have explained that "the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney." *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 289, 793 A.2d 535, 542 (2002)(quoting *Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 760–61, 736 A.2d 339, 343 (1999)). Thus by sanctioning errant attorneys we seek to "promote reliability and veracity in the legal profession and to deter other attorneys from committing violations of the MRPC." *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 274, 793 A.2d 515, 534 (2002); *see Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 290, 778 A.2d 390, 396 (2001)("[A] sanction is imposed to demonstrate to members of the legal profession the type of conduct that will not be tolerated."). The severity of the sanction depends upon the nature and extent of the attorney's misconduct in a given case. *See Attorney Grievance Comm'n v. Monfried,* 368 Md. 373,

396, 794 A.2d 92, 105 (2002); *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000)(noting "[t]he gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct")(quoting *Attorney Grievance Comm'n v. Milliken*, 348 Md. 486, 519, 704 A.2d 1225, 1241); *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 300, 614 A.2d 102, 114 (1992)(quoting *Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 680, 496 A.2d 672, 680 (1985)).

In the case *sub judice*, Bar Counsel seeks respondent's disbarment. In support of the recommendation for disbarment, Bar Counsel cites the AMERICAN BAR ASSOCIATION STANDARDS FOR IMPOSING LAWYER SANCTIONS, §§ 4.41, 9.21, and 9.22 (1991, 1992 Amendments). Section 4.41 states that disbarment is generally appropriate in cases involving the lawyer's failure to act with reasonable diligence and promptness in representing a client when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

The ABA defines aggravating circumstances as follows:

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution

(k) illegal conduct, including that involving the use of controlled substances.

We previously considered similar factors in determining whether disbarment was an appropriate disciplinary sanction. *See Attorney Grievance Comm'n v. Dunietz*, 368 Md. 419, 431, 795 A.2d 706, 711 (2002); *Monfried*, 368 Md. at 397, 794 A.2d at 105; *Attorney Grievance Comm'n v. Hayes*, 367 Md. 504, 511–13, 789 A.2d 119, 124–25 (2002); *Attorney Grievance Comm'n v. Jaseb*, 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001)(quoting *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996)).

■ Mr. Matthews enlisted respondent's legal services in the uncomplicated preparation and filing of a quit claim deed transferring title of Matthews' property at 1305 North Linwood Avenue to his daughter, complainant Gertrude Baskerville, and granddaughter. Respondent had Matthews execute the deed, but never recorded it and lost the original. Mr. Matthews, who was very ill with cancer at the time he employed respondent to handle the execution and filing of the deed, died believing that his property had been transferred to his daughter and granddaughter. Thereafter, when Ms. Baskerville complained to the Attorney Grievance Commission, respondent engaged in a series of efforts to avoid inquiries from Bar Counsel concerning this matter. Respondent's conduct constitutes an abandonment of his representation of Mr. Matthews, which resulted in injury to Ms. Baskerville and her daughter who were adversely affected by the respondent's failure to transfer title to the property. The inexcusable

neglect of work in the Matthews case coupled with respondent's attempts to conceal his neglect from Matthews' family and from Bar Counsel warrants sanction, the severity of which is aggravated by the other complaints filed with the Attorney Grievance Commission. *See Dunietz,* 368 Md. at 431, 795 A.2d at 712 (finding disbarment to be the appropriate sanction given the attorney's "continuing disregard for the attorney grievance process, his apparent indifference to the tenets of his chosen profession, the dereliction of his duties to his client, and his ostensible lack of remorse for his misconduct"); *Wallace,* 368 Md. at 293, 793 A.2d at 545 (stating that although the attorney did not have a prior disciplinary record, the attorney's "lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations" and failure to respond to inquiries from Bar Counsel warranted disbarment).

Furthermore, respondent failed to cooperate with Bar Counsel with regard to all three complaints filed against him by failing to respond in a timely fashion to numerous letters from Bar Counsel, by neglecting to appear at a hearing before the Inquiry Panel on August 8, 2000, and by claiming he was unaware of the Inquiry Panel hearing because of a failure to receive notice. At the rescheduled hearing before the Inquiry Panel on November 20, 2000, however, respondent acknowledged that, in fact, he had received notification of the earlier hearing. Respondent's deceptiveness and unresponsiveness were not limited to his interactions with Bar Counsel; rather, respondent made various and assorted promises in his capacity as an attorney to all three complainants which were unfulfilled.

We also must take into consideration respondent's unlawful conduct in neglecting his statutory tax obligation pursuant to Maryland Code (1988, 1997 Repl.Vol., 2001 Supp.) Section 10–906 and Section 10–817 of the Tax General Article. Respondent engaged in a repeated pattern of delinquency, commencing in 1998, by failing to make the appropriate employee withholding tax payments, by failing to file withholding tax

returns and pay trust fund income taxes for the monies withheld from respondent's employees' salaries. Respondent treated the delinquency notices and other inquiries from the Comptroller with the same degree of neglect he exhibited towards Bar Counsel, forcing the Comptroller to resort to filing a Notice of Lien of Judgment. Such conduct exemplifies respondent's lack of honesty and proclivity for engaging in conduct prejudicial to the administration of justice. *See Attorney Grievance Comm'n v. Atkinson*, 357 Md. 646, 655–56, 745 A.2d 1086, 1091 (2000)(explaining that the errant attorney need not be convicted of tax evasion in order to support a finding of dishonest conduct in violation of MRPC 8.4).

We recently iterated the unparalleled importance of honesty in the practice of law:

Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

*See Attorney Grievance Comm'n v. Lane*, 367 Md. 633, 646, 790 A.2d 621, 628 (2002)(quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001)). In the present matter, respondent's dishonest and evasive conduct clearly evidence his lack of fitness to continue in the practice of law.

In considering the facts and circumstances of this case in light in the context of the mandates of the Maryland Rules of Professional Conduct, we believe that respondent's lack of diligence in representing Mr. Matthews in the execution and recording of the deed, his inattentiveness to the management of his law practice, his dishonesty and deceitfulness with regard to his interactions with all three complainants, and his uncooperativeness with Bar Counsel warrant his removal from the practice of law. Respondent has demonstrated an abundant pattern of misconduct as an attorney. *See Lane*, 367 Md. at 647, 790 A.2d at 629 (finding disbarment to be the appropri-

ate sanction where attorney made "repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance" in violation of MRPC 1.1, 1.2, 1.3, 1.4, 1.5, and 8.4(a)(c) and (d)); *Attorney Grievance Comm'n v. Harrington,* 367 Md. 36, 53, 785 A.2d 1260, 1269–70 (2001)(Raker, J. dissenting)("An attorney who is dishonest and deceitful should not be practicing law."). Accordingly, respondent, Gregory Scott Angst is hereby disbarred.

*IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c) FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST GREGORY SCOTT ANGST.*

Chief Judge BELL concurs in the result only.