
69 A.3d 1053

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Jason A. KOBIN.

**Misc. Docket AG No. 18, Sept. Term, 2012.**

Court of Appeals of Maryland.

July 8, 2013.

566

James N. Gaither, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Jason Ashley Kobin, pro se.

Argued before BELL, C.J.,* HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

---

* Bell, C.J., participated in the hearing of the case, in conference in regard to its decision and in the adoption of the opinion, but he had retired from the Court prior to the filing of the opinion.

BARBERA, J.

The Attorney Grievance Commission ("Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action on May 11, 2012, against Respondent, attorney Jason A. Kobin. The petition alleged that Respondent engaged in professional misconduct by failing to supervise his nonlawyer assistant, manage his trust account, maintain withholding taxes in trust, and pay withholding taxes to the appropriate taxing authorities.

Pursuant to Maryland Rules 16–752(a) and 16–757(c), we designated the Honorable Angela M. Eaves of the Circuit Court for Harford County to hear the matter and make findings of fact and conclusions of law. Judge Eaves conducted a hearing on October 10, 2012, at which Respondent testified on his own behalf. Judge Eaves issued a memorandum opinion on November 21, 2012. Judge Eaves concluded, by clear and convincing evidence, that Respondent violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.15(a) and (b) (safekeeping property); 5.3 (responsibilities regarding nonlawyer assistants); 8.1(a) and (b) (bar admission and disciplinary matters); and 8.4(a), (b), (c), and (d) (misconduct). Judge Eaves also concluded that Respondent violated Maryland Rules 16–606.1 (attorney trust account record-keeping), 16–607 (commingling of funds), and 16–609 (prohibited transactions), as well as Maryland Code (2000, 2010 Repl. Vol.), § 10–306 of the Business Occupations and Professions Article ("BOP") (misuse of trust money). We agree. A Per Curiam Order disbarring Respondent was entered on May 2, 2013. We now explain the reasons for Respondent's disbarment.

## I.

### A.  Findings of Fact

Judge Eaves made the following findings of facts by clear and convincing evidence. See Md. Rule 16–757(b) ("[Bar Counsel] has the burden of proving the averments in the petition by clear and convincing evidence."). Respondent was admitted to the Maryland Bar in 1999 and is not licensed to

practice law in any other state. Shortly after being admitted to the bar, Respondent started his own practice, The Law Offices of Jason Kobin and Associates, LLC. Respondent had offices in Bel Air, Dundalk, and Salisbury, Maryland, and employed between six and ten attorneys at any given time. Respondent now operates his practice from his residence.

Respondent contracted with Central Payroll Management ("CPM") to manage Respondent's taxes and employee payroll matters. CPM was responsible for sending Respondent's employees' federal and state withholding taxes to the Internal Revenue Service ("IRS") and the Maryland Comptroller, respectively, and for preparing and issuing Respondent's employees' paychecks and tax withholding documents. CPM made payments to the taxing authorities and issued employee paychecks after withdrawing funds from Respondent's bank account with Bank of America, believing the transfers were approved. CPM later received notice from Bank of America, on more than one occasion, that there were insufficient funds in the firm's bank account. Bank of America then reversed the transfers and charged CPM withdrawal fees. CPM cancelled the issued paychecks, but because CPM already had paid electronically Respondent's employee withholding taxes, CPM could not cancel those payments and had to pay Respondent's withholding taxes with its own funds. When CPM eventually cancelled its contract with Respondent, the firm owed CPM approximately $1,720. Respondent's payments to CPM bounced three or four times before CPM recovered the full balance owed by Respondent's firm.

Sarah Williams worked as an associate attorney for Respondent's firm from January 2007 until June 2010. Ms. Williams was to receive a paycheck every two weeks, but often was paid late or was asked to wait before depositing her checks. Ms. Williams also requested her W–2 statement from Respondent multiple times but did not receive the document from Respondent until several months after she filed her tax return for that year.[1] In 2011, Ms. Williams filed a complaint with the

---

1. The IRS requires all employers to issue to an employee a W–2 statement, which includes wage and tax withholding information. The

Commission because Respondent did not timely provide Ms. Williams with a W–2 statement.

Thomas J. Madden, Jr. began his tenure with Respondent's firm as an associate attorney in 2008 and eventually resigned in September 2011. As with Ms. Williams, Respondent failed to pay Mr. Madden on time. Mr. Madden occasionally received partial wages and never received a W–2 statement from Respondent despite multiple requests. Both Ms. Williams and Mr. Madden had to file their tax returns without W–2 statements.

Respondent hired Donna Herr to assist his office manager, Stephanie Mahon. Ms. Herr was 18 years old when she began working for the firm and previously worked at Burger King. Ms. Herr subsequently became the firm's office manager. Respondent did not advise Ms. Herr, who was not an attorney, of the rules regarding trust accounts, nor did Respondent train her how to comply with those rules. Respondent testified that he believed Ms. Herr "understood" that she should not do anything improper with the trust account, despite her lack of training. Respondent authorized Ms. Herr to write checks from the trust account and did not keep records relating to that account. Respondent "occasionally" checked bank statements online to ensure there were sufficient funds in the account to cover the checks Ms. Herr wrote. Respondent admitted that he did not understand the Maryland Rules regarding attorney trust accounts and did not review the rules pertaining to "Interest on Lawyers Trust Accounts" ("IOLTA accounts" or "trust accounts"). Respondent, for example, believed that the flat fees paid by his clients could be spent immediately and did not need to remain in the trust account until earned.

Respondent commingled client fees and personal funds by depositing both into the trust account and using client funds in that account to pay for personal and business expenses. Re-

employee is required by federal law to submit a completed W–2 statement with his or her tax return.

spondent authorized Ms. Herr to write checks from the firm's trust account for employee paychecks and other business operating expenses. Ms. Herr also issued paychecks to a "Marilyn Walther," an individual whom Respondent did not know and who was not an employee of the firm. One check written by Ms. Herr was to herself for "wages/invoices." Respondent approved of this practice and reviewed invoices to ensure that Ms. Herr's payments to herself were legitimate.

Respondent did not pay employee withholding taxes for Ms. Williams and Mr. Madden in 2010 and 2011. Withholding taxes were not kept in a separate trust account, and Respondent failed to keep records of the amount of taxes withheld. Respondent blamed CPM for refusing to release the W–2 statements until Respondent fully paid the firm's outstanding balance. Respondent also failed to file required IOLTA reports and did not believe this failure was wrongful. Respondent asserted to Bar Counsel that his bank records could be sufficiently reconciled against his client files and a master ledger he kept for all of his cases. Yet, Respondent did not submit timely to Bar Counsel those bank records.

The Commission made a lawful demand for Respondent's trust account records during discovery. Respondent failed to respond to those requests. Respondent testified that he did not provide the requested records because they did not exist in the form requested by the Commission. Only upon questioning at the hearing did Respondent inform Bar Counsel and the hearing judge that the requested *trust* account records did not exist. At that time, Respondent conceded that his *operating* account records did exist but nonetheless did not provide them to the Commission.

Judge Eaves found that Respondent knowingly made false statements in his Response to Ms. Williams's complaint. In particular, Respondent had asserted that Ms. Williams made an "absurd and completely false" allegation that checks written on the IOLTA account had bounced. Judge Eaves found that Respondent was aware of bounced checks and insufficient funds in his accounts, and therefore his statement was know-

ingly false. Judge Eaves additionally found that Respondent had lied to the Commission about the outstanding money Respondent owed to CPM.

### B. Conclusions of Law

### Withholding Taxes

Rule 1.15 of the Maryland Lawyers' Rules of Professional Conduct, in pertinent part, provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607 b.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property. . . .

Judge Eaves concluded that Respondent violated MLRPC 1.15(a) by failing to maintain a separate trust account for withholding employee taxes. She based that conclusion on the fact that CPM withdrew funds for withholding taxes and payroll from the same operating account. Judge Eaves also concluded that Respondent's failure to withhold taxes for the taxing agencies violated MLRPC 1.15(a) and (b).

### *Commingling, Recordkeeping, Misuse of Trust Money*

Judge Eaves further concluded that Respondent violated Maryland Rules 16–606.1, 16–607, and 16–609; and BOP § 10–306 by commingling funds, misusing trust money, and failing to keep adequate records. First, Judge Eaves found that Respondent failed to keep trust account records as required by Maryland Rule 16–606.1.[2] Respondent further did not produce any bank records or a master ledger sufficient to reconcile against client files. Based on these facts, Judge Eaves concluded that Respondent violated Rule 16–606.1.

Second, Judge Eaves found that Respondent engaged in commingling, as prohibited by MLRPC 1.15 and Maryland Rule 16–607,[3] by depositing both client-entrusted funds and personal funds into the trust account. Judge Eaves further

---

**2.** Maryland Rule 16–606.1, entitled "Attorney trust account record-keeping," with specificity requires an attorney, in part: to "create[ ] and maintain[ ]" records "for the receipt and disbursement of funds of clients or of third persons"; to "create[ ] a monthly reconciliation of all attorney trust account records, client matter records, . . . and the adjusted month-end financial institution statement balance." The rule also requires that a record be maintained for a period of five years from the date of its creation. *Attorney Grievance Comm'n v. Alston,* 428 Md. 650, 664 n. 8, 53 A.3d 1142 (2012).

**3. Rule 16–607. Commingling of funds.**
    a. **General prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.
    b. **Exceptions.** 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges,

concluded that Respondent's failure to review the Rules and understand that flat fees did not immediately become earned funds violated MLRPC 1.15.

Third, Judge Eaves concluded, by clear and convincing evidence, that Respondent used funds in the trust account for wages and other operating expenses, and he failed to preserve client-entrusted funds for the benefit of his clients in violation of Maryland Rule 16–609.[4] Judge Eaves concluded that this conduct further violated BOP § 10–306, which provides that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

---

or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

4. **Rule 16–609. Prohibited transactions.**

a. **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

b. **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

c. **Negative balance prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

*Responsibilities Regarding Nonlawyer Assistants*

When a lawyer or law firm employs nonlawyers, MLRPC 5.3 provides that:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Maryland Lawyers' Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action; . . . .

Judge Eaves found, by clear and convincing evidence, that Respondent did not train Ms. Herr with respect to the trust account, let alone supervise Ms. Herr other than by ensuring there were sufficient funds in the account to cover the checks she wrote. Moreover, Respondent delegated to Ms. Herr the authority to write checks from the attorney trust account for wages and other operating expenses. Because this conduct was not compatible with Respondent's own professional obligations under MLRPC 1.15, Maryland Rules 16–607 and 16–609, and BOP § 10–306, Judge Eaves concluded that Respondent violated MLRPC 5.3.

*Bar Admission and Disciplinary Matters*

Under MLRPC 8.1, a lawyer, "in connection with a disciplinary matter," shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

Judge Eaves found that Respondent lied in his Response by characterizing as "absurd and completely false" Ms. Williams's allegation that checks written on the IOLTA account had bounced. Judge Eaves concluded that this statement was false because Respondent admitted to his responsibility for monitoring the account balance and to his knowledge that several checks written from the account were returned for insufficient funds. Judge Eaves further found that Respondent lied to the Commission about the amount of money owed to CPM. Based on these factual findings, Judge Eaves concluded that Respondent violated MLRPC 8.1(a). Additionally, Judge Eaves found that Respondent violated MLRPC 8.1(b) by failing to respond to the Commission's discovery requests for records relating to his trust account, and by failing to disclose before the hearing that those records did not exist.

*Misconduct*

MLRPC 8.4 provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; ...

Judge Eaves found that Respondent was required to withhold and pay income taxes for his employees and did not do so for the 2010 and 2011 tax years. *See* 26 U.S.C. §§ 3401, 7203; Md. Code (2003, 2010 Repl. Vol.), §§ 10–906(a), (b) and 13–1007(b), (c) of the Tax–General Article ("TG"). Judge Eaves also found that Respondent failed to distribute timely a W–2 statement to Ms. Williams and failed entirely to issue a W–2 statement to Mr. Madden. Based on these factual findings, Judge Eaves concluded that Respondent violated MLRPC 8.4(a), (b), (c), and (d).

### Mitigation

Respondent testified in mitigation that he had a successful practice until his father's death in 2005, when, as a result, Respondent became depressed and developed a gambling addiction for which he sought inpatient treatment. Respondent also testified that his firm underwent significant financial troubles, which were accelerated by his failure to pay his employees' wage withholding taxes, and added to his depression.

Judge Eaves found this testimony insufficient to mitigate Respondent's violations by a preponderance of the evidence because Respondent provided no demonstrative evidence or expert testimony corroborating that his depression or gambling addiction impaired his ability to meet his professional obligations. *See* Md. Rule 16–757(b). Additionally, Respondent failed to provide evidence of when his gambling addiction began or that he sustained losses that impaired his ability to meet his financial obligations. Judge Eaves therefore concluded that Respondent proved no mitigating factors.

### II.

#### A. The Standard of Review

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an indepen-

dent review of the record." *Attorney Grievance Comm'n v. Gardner*, 430 Md. 280, 288, 60 A.3d 456 (2013) (quoting *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 134, 50 A.3d 1205 (2012)). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Zimmerman*, 428 Md. at 134, 50 A.3d 1205 (2012) (citing *Attorney Grievance Comm'n v. London*, 427 Md. 328, 343, 47 A.3d 986 (2012)). The hearing judge may " 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15, 27, 45 A.3d 281 (2012) (quoting *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085 (2006)). "That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses." *Tanko*, 427 Md. at 27, 45 A.3d 281.

■ "We review de novo the hearing judge's proposed conclusions of law." *Zimmerman*, 428 Md. at 134, 50 A.3d 1205 (quoting *London*, 427 Md. at 343, 47 A.3d 986). In other words "the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Attorney Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757 (2002) (quoting *Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763 (2001) (alteration in original)). We examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions by a "clear and convincing" standard of proof. *Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328 (2007) (quoting *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 16, 904 A.2d 477 (2006)).

### B. *Exceptions*

The Commission filed no exceptions to Judge Eaves's findings of fact or conclusions of law. Respondent takes no exception to Judge Eaves's findings of fact or conclusions of law relating to his violations of MLRPC 1.15, 5.3, 8.1(b), and 8.4, nor does Respondent contest his violations of Maryland Rules 16–606.1, 16–607, and 16–609, and BOP § 10–306. In-

deed, Respondent conceded those violations throughout the proceedings. Respondent does take exception, however, to two findings of fact that resulted in Judge Eaves's conclusion that Respondent violated MLRPC 8.1(a).

First, Respondent excepts to Judge Eaves's finding that Respondent lied to the Commission about the outstanding money Respondent owed to CPM. Judge Eaves found that Respondent was notified when payments made to CPM were reversed for insufficient funds, and that Respondent also was aware of an outstanding balance with CPM. Still, Respondent stated in his Response that "[t]he funds are debited and paid for each payroll authorized by the firm." Judge Eaves found, by clear and convincing evidence, that this did not accurately represent Respondent's relationship with CPM. Judge Eaves therefore found as untrue Respondent's statement regarding the outstanding balance owed to CPM.

Respondent has not supported his exception with anything other than the assertion that he did not lie to the Commission about his outstanding balance to CPM. Respondent's statement in his Response indicates that, for every payroll, CPM debits Respondent's account and Respondent makes the appropriate payment. This is a clear misrepresentation of Respondent's correspondence with CPM because Respondent repeatedly had insufficient funds in the account from which CPM would withdraw to pay Respondent's taxes and issue paychecks, and Respondent's firm accrued an outstanding balance owed to CPM of $1,720. Judge Eaves's finding of fact on that point, therefore, is not clearly erroneous. We therefore overrule this exception and hold that Respondent violated MLRPC 8.1(a) as a result of that misrepresentation.

Respondent also takes exception to Judge Eaves's finding that he lied in his Response when he stated that Ms. Williams's allegations regarding bounced checks written on the IOLTA account were "absurd and completely false."[5] Ms.

---

5. Ms. Williams's full complaint is not in the record and we can only glean what she said by reference to Respondent's characterization of it in his Response.

Williams alleged in her complaint that she had been issued payroll checks from both the firm's operating account and the IOLTA account, and she believed that checks on both accounts had bounced. Respondent denies that any check made payable to Ms. Williams from the IOLTA account had bounced because such an event would have triggered a separate investigation by Bar Counsel. Further, Respondent maintains that no bank sent notice of a bounced IOLTA check issued to Ms. Williams, and Bar Counsel has not alleged such. Respondent concedes that checks issued from the firm's *operating* account had bounced, and his statement in the Response was intended to focus solely on Ms. Williams's allegation that a check issued to her from the IOLTA account had bounced. Respondent therefore contends that Judge Eaves's conclusion based on Ms. Williams's inaccurate statement—that Respondent violated MLRPC 8.1(a)—is incorrect and may have resulted from a misunderstanding in the record.

At oral argument, Bar Counsel conceded that the record did not include a bounced check from Respondent's IOLTA account.[6] The Commission's exhibit, cited by Judge Eaves in support of her conclusion, demonstrates that Respondent had bounced checks from his *operating* account, but there was no evidence to corroborate Ms. Williams's allegation regarding the IOLTA account. We therefore sustain Respondent's exception. Still, because we find that Respondent made a false statement regarding his relationship with CPM, we agree with Judge Eaves's ultimate conclusion that Respondent violated MLRPC 8.1(a), *see supra.*

### III.

■ We review *de novo* the hearing judge's conclusions of law. *Attorney Grievance Comm'n v. Alston,* 428 Md. 650, 674,

---

**6.** At oral argument before this Court, Bar Counsel asserted that, although Respondent's Response regarding bounced checks was technically true, Respondent still overdrafted his IOLTA account. Bar Counsel submitted a correction on the same day as oral argument agreeing that Respondent had overdrafted only his operating account and not the IOLTA account.

53 A.3d 1142 (2012). For the reasons that follow, we conclude that Respondent violated MLRPC 1.15(a), (b), and (d); 5.3(a), (b), and (c); 8.1(a) and (b); and 8.4(a), (b), (c), and (d); Maryland Rules 16–606.1, 16–607, and 16–609; and BOP § 10–306.

### Withholding Taxes

■ We addressed the application of MLRPC 1.15 to a lawyer's failure to withhold employee taxes in trust in *Attorney Grievance Commission v. Johnson*, 409 Md. 470, 976 A.2d 245 (2009). In *Johnson*, we emphasized that MLRPC 1.15(a) and (c) relate specifically to a lawyer's duties "in connection with a representation." *Id.* at 492, 976 A.2d 245 (quoting *Attorney Grievance Comm'n v. Clark*, 363 Md. 169, 182, 767 A.2d 865 (2001)). In contrast, MLRPC 1.15(d) [7] "refers generally to a lawyer's duty to act with the care of a professional fiduciary for any property held by an attorney on behalf of third persons." *Id.* We also held in *Clark* that the State is a relevant "third person" for purposes of this subsection. 363 Md. at 181–82, 767 A.2d 865. A lawyer's failure to withhold employee taxes and keep withholding taxes in trust for the State therefore violates MLRPC 1.15(d).[8]

Respondent authorized CPM to draw funds from the firm's operating account to cover both withholding taxes and payroll expenses. His failure to keep those funds in a separate trust account violated MLRPC 1.15(d). Respondent also admitted that he did not maintain appropriate records of withholding

---

**7.** In 2005, Rule 1.15 was amended to add current subsection (b). The previous subsection (b) was moved to 1.15(d) and the rest of Rule 1.15 was not substantively changed. Our analysis in *Johnson* and *Clark* refers to current MLRPC 1.15(d), previously codified as 1.15(b). *See* Standing Committee on Rules of Practice and Procedure, Rules Order (Feb. 8, 2005); *Johnson*, 409 Md. at 476 n. 1, 976 A.2d 245.

**8.** Although both Judge Eaves and Bar Counsel stated that this conduct violated MLRPC 1.15(a) and (b), it is plain to us that they were referring to an earlier iteration of MLRPC 1.15, *see supra* note 6. In any event, we agree with Judge Eaves and Bar Counsel that Respondent violated MLRPC 1.15(a) and (b) in connection with his mismanagement of the trust account, *see infra*.

taxes in violation of MLRPC 1.15(d). *See Attorney Grievance Comm'n v. Thompson,* 376 Md. 500, 509, 830 A.2d 474 (2003) (concluding that Thompson's failure to maintain adequate record-keeping of withholding taxes violated MLRPC 1.15).

*Commingling, Recordkeeping, and Misuse of Trust Money*

We also agree with Judge Eaves's conclusion that Respondent violated MLRPC 1.15(a) and (b); Maryland Rules 16–606.1, 16–607, and 16–609; and BOP § 10–306. Respondent conceded his failure to comply with the trust account record-keeping requirements set out by Maryland Rule 16–606.1. Respondent therefore violated MLRPC 1.15(a). Judge Eaves also found that Respondent deposited both client funds and personal funds into the trust account and used the trust account for wages and other personal expenses. Such commingling and misuse of trust money clearly violates MLRPC 1.15(a) and (b); Maryland Rules 16–607 and 16–609; and BOP § 10–306. *See, e.g., Attorney Grievance Comm'n v. Nussbaum,* 401 Md. 612, 638–39, 934 A.2d 1 (2007) (determining that Nussbaum violated MLRPC 1.15(a) and (b); Maryland Rules 16–607 and 16–609; and BOP § 10–306 by depositing improper funds into his trust account and using client funds for personal purposes).

*Responsibilities Regarding Nonlawyer Assistants*

■ We conclude that Respondent violated MLRPC 5.3 by failing to advise Ms. Herr of the rules regarding trust accounts or provide her with any training on how to comply with those rules. In *Attorney Grievance Commission v. Zuckerman,* 403 Md. 695, 944 A.2d 525 (2008), we determined that the respondent "did not instruct his employees of the proper management of the trust account and inform himself of the status of his employees' efforts to monitor the funds in the account." *Id.* at 713, 944 A.2d 525 (quoting *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 374, 872 A.2d 693 (2005)). We concluded that "[s]uch a failure to oversee his employees' tasks constitutes a violation of MRPC 5.3(a) and (b)." *Id.* Likewise, Respondent's failure to ensure that Ms.

Herr complied with the rules governing trust accounts violated MLRPC 5.3(a) and (b). Respondent authorized Ms. Herr to write checks from the trust account and only supervised her conduct by ensuring there were sufficient funds with which Ms. Herr could write checks. *See Ward*, 394 Md. at 28–30, 37, 904 A.2d 477 (concluding that the attorney violated MLRPC 5.3(a) when he directed his assistant to obtain a notarization of a document in the absence of the signatory because such conduct was "prejudicial to the administration of justice" under MLRPC 8.4(d)). Additionally, because Ms. Herr's handling of the firm's trust account was incompatible with Respondent's professional obligations under MLRPC 1.15, as explained *supra*, and because Respondent authorized Ms. Herr to engage in that conduct, Respondent is responsible for those violations under MLRPC 5.3(c). *See Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 465–66, 481, 671 A.2d 463 (1996) (holding that the attorney's failure to ensure that the bookkeepers did not engage in conduct that was incompatible with the lawyer's obligations violated MLRPC 5.3(b) and (c)).

### *Bar Admissions and Disciplinary Matters*

■ As noted in our discussion of Respondent's exceptions, *supra*, we conclude that Respondent violated MLRPC 8.1(a) by misrepresenting his relationship with CPM in his Response to the Commission. We also agree with Judge Eaves's conclusion that Respondent's failure to respond to the Commission's discovery request, and to provide the Commission with information relating to that request, violated MLRPC 8.1(b). *See Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 323, 44 A.3d 344 (2012) (failing to reply to two of the Commission's letters requesting information from the respondent violated 8.1(b)).

### *Misconduct*

We have held that when a "respondent has violated several Rules of Professional Conduct, he necessarily violated MLRPC 8.4(a) as well, which finds professional misconduct where a lawyer violate[s] or attempt[s] to violate the Rules of

Professional Conduct." *Attorney Grievance Comm'n v. Galla-gher*, 371 Md. 673, 710–11, 810 A.2d 996 (2002) (internal quotation marks omitted). By violating MLRPC 1.15, 5.3, and 8.1, Respondent also violated MLRPC 8.4(a).

Additionally, Respondent's failure to comply with federal and state tax obligations violated MLRPC 8.4(b), (c), and (d). We have held that, "when an attorney neglects statutory tax obligations, it ordinarily reflects adversely on his or her honesty or fitness to practice law." *Attorney Grievance Comm'n v. Mininsohn*, 380 Md. 536, 566, 846 A.2d 353 (2004). Respondent's repeated failure to pay withholding taxes and issue W–2 statements to his employees violated 8.4(b). *See Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 454, 983 A.2d 477 (2009) (noting that "[a]n actual conviction is not required to establish that an attorney violated MRPC 8.4(b), so long as the underlying conduct that constitutes the crime is proven by clear and convincing evidence").

We agree with Judge Eaves that Respondent violated MLRPC 8.4(c). In *Mininsohn*, we concluded that the attorney violated MLRPC 8.4(c) where the attorney "willfully and regularly failed to comply with his obligations as an employer . . . by failing to withhold State income tax from the wages of his employees, and to hold such funds in trust for the State." 380 Md. at 562, 566, 846 A.2d 353. We observed that a willful failure to comply with tax obligations has been found to demonstrate the attorney's dishonesty and deceitful nature. *Id.* at 568, 846 A.2d 353 (citing *Attorney Grievance Comm'n v. Angst*, 369 Md. 404, 419, 800 A.2d 747 (2002)). Moreover, "[t]his Court has consistently found that an attorney's misappropriation . . . violates MRPC 8.4(c)." *Nussbaum*, 401 Md. at 642, 934 A.2d 1. Misappropriation and failure to pay withholding taxes similarly have been held to constitute conduct prejudicial to the administration of justice under MLRPC 8.4(d). *See, e.g., Clark*, 363 Md. at 183, 767 A.2d 865 (finding a violation of MLRPC 8.4(d) because an attorney's failure to file withholding taxes "erodes public confidence [in the profession], and thus, is prejudicial to the administration of justice").

Respondent's violations of MLRPC 1.15 and failure to pay withholding taxes accordingly violated MLRPC 8.4(d).

## IV.

■ We now turn to the sanction for Respondent's professional misconduct. When disciplining attorneys for violating the Rules of Professional Conduct, "our aim is to protect the public and the public's confidence in the legal profession rather than to punish the attorney." *Attorney Grievance Comm'n v. Palmer,* 417 Md. 185, 206, 9 A.3d 37 (2010) (quoting *Attorney Grievance Comm'n v. Edib,* 415 Md. 696, 718, 4 A.3d 957 (2010)). To do so, we consider the "particular facts and circumstances of each case" and weigh any mitigating or aggravating factors. *Thompson,* 376 Md. at 519, 830 A.2d 474. Given the egregiousness of Respondent's misconduct, we have imposed the sanction of disbarment.

Respondent violated numerous Rules of Professional Conduct. We need only refer at this juncture to those violations that, standing alone, warrant disbarment. Our general rule is that "disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds." *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 512, 789 A.2d 119 (2002); *accord Gallagher,* 371 Md. at 714–15, 810 A.2d 996 (disbarring attorney for commingling funds and professional misconduct); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 475–76, 800 A.2d 782 (2002) (disbarring attorney for commingling trust funds with personal funds with the intent to hide assets from creditors); *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 276, 793 A.2d 515 (2002) (concluding that the attorney's "dishonest and deceitful conduct with regard to the misuse of his client escrow account alone would be sufficient to warrant . . . disbarment").

Respondent knowingly misappropriated client funds and withholding taxes owed to the IRS and the Maryland Comptroller in 2010 and 2011 and used those funds for business and personal purposes. Respondent failed to take reasonable steps to ensure that his office manager complied with Respon-

dent's professional obligations regarding his trust account, and he ratified Ms. Herr's improper management of the account. This conduct is sufficiently dishonest to warrant disbarment absent compelling mitigating circumstances. *See Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 132, 43 A.3d 988 (2012) (quoting *Attorney Grievance Comm'n v. Roberts*, 394 Md. 137, 166, 904 A.2d 557 (2006)) (stating that misappropriation is "infected with deceit and dishonesty and ordinarily will result in disbarment").

We have said that,

in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MLRPC

*Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463 (2001). Here, Judge Eaves found no mitigating factors. In order to demonstrate sufficient mitigation to warrant a lesser sanction than disbarment there "needs to be almost conclusive, and essentially uncontroverted evidence that ... the attorney had a serious and debilitating mental condition." *Id.* at 418–19, 773 A.2d 463. Additionally, "the mental condition must serve as the 'root cause' for the misconduct—meaning, it must 'affect[ ] the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion.'" *Palmer*, 417 Md. at 212, 9 A.3d 37 (alteration in original) (quoting *Vanderlinde*, 364 Md. at 419, 773 A.2d 463).

Respondent's only suggested mitigation is his father's death in 2005, which he asserted led to his depression and a gambling addiction. Respondent, however, did not provide any evidence, much less uncontroverted evidence, corroborating his debilitation. Nor did Respondent provide tangible proof

or testimony that his asserted depression or gambling addiction was the "root cause" of his misconduct. We are not persuaded by Respondent's contention that the contrast between his successful practice before his father's death and his misconduct after his father's death is sufficient evidence to provide meaningful mitigation. Accordingly, we entered the May 2, 2013, Per Curiam Order disbarring Respondent and awarding costs against him.